# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KENYATTA SOBEASR CLINCY,<br><br>      Plaintiff,<br><br>v.<br><br>LAURA GRAMLING-PEREZ, GUST PETROPOULOS, DANIEL P. THOMPSON, GRANT I. HUEBNER, ANN T. BOWE, LORI A. KUEHN, ELLEN R. BROSTROM, and PAMELA MOORSHEAD,<br><br>      Defendants. | Case No. 18-CV-1093-JPS<br><br><br><br>**ORDER** |

  Plaintiff, a prisoner proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 alleging that his civil rights were violated in connection with his criminal prosecution in Wisconsin state court. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). Plaintiff has been assessed and paid an initial partial filing fee of $5.31. 28 U.S.C. § 1915(b)(1). The Court now turns to screening the complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A.

1. **LEGAL STANDARD**

  The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint

allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## 2. RELEVANT FACTS

Plaintiff's claims arise from his prosecution in Milwaukee County Circuit Court Case No. 2011CF001752, which concerned a home invasion. The victim was attacked in her home while her husband was at work. The husband returned home to find it ransacked, with signs of a violent struggle. He found his wife on the kitchen floor, lying face down in a pool of blood, unconscious and barely breathing. Circumstantial evidence led police to a residence about fifteen blocks away and, in it, an attic room used by Plaintiff. After viewing the room with the permission of Plaintiff's girlfriend, police returned with a search warrant and seized several items connecting Plaintiff to both the room and the home invasion. These items

included several objects that the husband had listed as missing from his home and a coat with the victim's blood on it. In addition to items covered by the search warrant, police seized other items that might have appeared to officers, based on the appearance of the items and information from Plaintiff's girlfriend, to be items taken in other home invasions. *See State v. Clincy*, 862 N.W.2d 903, 2015 WL 1057511, at *1 (Wis. Ct. App. 2015).

On the advice of his counsel, Plaintiff pleaded no-contest to charges of theft and first-degree reckless injury. Prior to sentencing, Plaintiff learned that his counsel had only recently obtained and reviewed the search warrant executed at his home. Plaintiff moved to withdraw his pleas on the ground that counsel's failure to investigate the circumstances of the search and seizure prior to the entry of his pleas constituted a just reason to withdraw the pleas. Successor counsel was appointed to represent Plaintiff for purposes of that motion. Following a hearing, the trial court denied the motion and sentenced Plaintiff to a significant term of imprisonment. Plaintiff appealed and was represented by a new attorney during the post-conviction proceedings. His conviction and sentence were affirmed by the Wisconsin Court of Appeals and the Wisconsin Supreme Court.

3. ANALYSIS

Given that brief overview of the case, the Court will now consider the viability of Plaintiff's claims against the panoply of named defendants. The defendants in this case include: Laura Gramling-Perez ("Gramling-Perez"), a commissioner of the Milwaukee County Circuit Court; Gust Petropoulos ("Petropoulos") and Daniel Thompson ("Thompson"), detectives of the Milwaukee Police Department ("MPD"); Grant Huebner ("Huebner"), the State prosecutor in Plaintiff's case; Ann Bowe ("Bowe"), Plaintiff's first trial counsel; Lori Kuehn ("Kuehn"), Plaintiff's successor

trial counsel; Milwaukee County Circuit Court Judge Ellen Brostrom ("Judge Brostrom"), the trial judge in Plaintiff's case; and Pamela Moorshead ("Moorshead"), Plaintiff's post-conviction counsel. In this analysis, the Court will group the defendants as appropriate.

### 3.1 The Judge and Commissioner

First, Plaintiff's claims against Gramling-Perez and Judge Brostrom must be dismissed on the basis of judicial immunity. It has long been established that judges and court commissioners, being sued solely for judicial acts, are protected by absolute judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Forrester v. White*, 484 U.S. 219, 225–29 (1988); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001); *Myrick v. Greenwood*, 856 F.3d 487, 488 (7th Cir. 2017). Plaintiff challenges Gramling-Perez's decision to issue the warrant for his home which he believes was not supported by probable cause. (Docket #1 at 1–2). As for Judge Brostrom, he accuses her of committing legal errors in ruling on his motions, engaging in *ex parte* communications with his successor trial counsel, and displaying bias against him. *Id.* at 6–7. Whether or not these allegations are true, they concern acts that were taken in a judicial capacity. Allegations of bad faith or malice are not sufficient to overcome judicial immunity. *Mireles*, 502 U.S. at 11. Moreover, there is no suggestion that the judge or commissioner were without jurisdiction to render the decisions they did. *Id.* at 12. Gramling-Perez and Judge Brostrom are, therefore, cloaked with judicial immunity and must be dismissed.

### 3.2 Plaintiff's Defense Counsel

Second, Plaintiff's claims against his former defense counsel, Bowe, Kuehn, and Moorshead, must be dismissed. Section 1983 cannot be used to challenge actions undertaken as part of "a lawyer's traditional function[ ]

as counsel to a defendant in a criminal proceeding," because such an attorney does not act "under color of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 324–25 (1981). The acts that form the basis of Plaintiff's constitutional claims against his lawyers fall squarely within the traditional functions of a criminal defense lawyer. He accuses Bowe of failing to investigate the purported illegality of the search of his home and lying to him about reviewing the warrant documents. (Docket #1 at 4–5). With respect to Kuehn, he complains that she failed to successfully argue his plea withdrawal motion before Judge Brostrom. *Id.* at 5. As for Moorshead, Plaintiff claims that she did not properly raise or argue all of the claims he wished to assert on appeal. *Id.* Because Section 1983 does not exist for Plaintiff to air grievances against his state-appointed defense lawyers, these claims cannot proceed.[1]

### 3.3 The MPD Officers and State Prosecutor

Finally, the Court evaluates Plaintiff's claims against the MPD officers, Petropoulos and Thompson, as well as the State prosecutor, Huebner. Plaintiff alleges that Petropoulos submitted a warrant application to Gramling-Perez that did not particularly describe the objects to be seized from his home and did not describe how they matched items stolen from the home Plaintiff invaded. (Docket #1 at 3). He also suggests that Petropoulos falsely represented facts supporting his assertion that probable cause existed to search Plaintiff's room. *See id.*

---

[1] Further, although Plaintiff at times suggests that his attorneys conspired with state officials to cover up law enforcement misconduct, he cannot maintain a civil conspiracy claim pursuant to 42 U.S.C. § 1985(3) because he alleges no class-based animus on the part of the conspirators. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985).

Plaintiff complains that Thompson executed the search warrant at his home but seized many more items than were identified in the warrant. *Id.* He argues that Thompson acted in "flagrant disregard" of the limitations of the warrant by seizing objects not identified therein and by searching for evidence of other crimes not under investigation. *Id.* Further, Plaintiff theorizes that Petropoulos used very general language in the warrant to provide cover for Thompson to perform an overzealous search. *Id.*

As for Huebner, Plaintiff alleges that he helped the MPD officers prepare affidavits submitted with the warrant application *Id.* at 4. He also claims that Huebner pursued unsupported criminal charges and withheld exculpatory evidence from him during discovery, including the overbroad warrant itself and evidence that Thompson conducted the search in an impermissible manner. *Id.*

The allegations against Petropoulos and Thompson appear to fit within a Fourth Amendment framework. Knowingly lying in a warrant application violates the Fourth Amendment's protection against unreasonable searches and seizures, if the officer's false statements were necessary to the determination that a warrant should issue. *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Similarly, executing a warrant that is obviously deficient in its particularity, or interpreting a valid warrant as giving license to rummage wherever police would like, likely violates the Fourth Amendment. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992).

Plaintiff's allegations also appear to state a claim against Huebner. Coloring that analysis, however, is prosecutorial immunity. A prosecutor enjoys absolute immunity from suit for actions taken insofar as he is

"act[ing] within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). For instance, immunity encompasses "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek indictment has been made." *Imbler*, 424 U.S. at 420. However, it does not protect most pre-arrest investigatory conduct. *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014); *Bianchi v. McQueen*, 818 F.3d at 309, 318 (7th Cir. 2016).

Plaintiff's claims concerning Huebner's pursuit of the prosecution in court and his discovery disclosure violations are barred because they pertain to Huebner's conduct during the judicial phase of the case and relate to prosecutorial, not investigative, decisions. *Fields v. Wharrie*, 672 F.3d 505, 513 (7th Cir. 2012); *Whitlock v. Brueggemann*, 682 F.3d 567, 579–80 (7th Cir. 2012). But the claim that Huebner advised the police about the contents and propriety of the warrant application touches on the investigatory phase of the case, so it can proceed under the Fourth Amendment. *See Mink v. Suthers*, 482 F.3d 1244, 1260 (10th Cir. 2007); *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) ("The absolute immunity of a prosecutor does not extend to his giving legal advice to the police when they are investigating whether a crime has occurred."). It is noteworthy that Plaintiff does not accuse Huebner of fabricating evidence, so his claim is confined to whether Huebner erroneously advised the MPD officers that probable cause supported the search warrant. *See Burns v. Reed*, 500 U.S. 478, 491–92 (1991); *Buckley*, 509 U.S. at 275.

Thus, it appears that Plaintiff has stated actionable Fourth Amendment claims against Petropoulos, Thompson, and Huebner. The

Court closes with a separate, crucial observation: whatever the merit of these claims, they are likely time-barred. A Wisconsin plaintiff must bring a Section 1983 claim within six years of its accrual. Wis. Stat. § 893.53; *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989); *Hemberger v. Bitzer*, 574 N.W.2d 656, 660 (Wis. 1998). For Plaintiff, that means his claims needed to accrue on or after July 16, 2012, six years prior to the filing of his complaint.[2]

A Section 1983 claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief[.]'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Usually, federal courts apply a discovery rule, holding that constitutional claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992); *Logan v. Wilkins*, 644 F.3d 577, 581 (7th Cir. 2011). However, the plaintiff need not understand the full constitutional dimensions of his injury—he need only have reason to know that he was

---

[2]The allegations in this case raise concerns pertaining to *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which holds that a Section 1983 claim may not be pursued if its success would necessarily imply the invalidity of a criminal conviction—unless and until that conviction is overturned. However, not every damages action is *Heck*-barred. As long as the plaintiff's claims do not necessarily impugn the validity of his underlying conviction, they can be entertained. *Wallace*, 549 U.S. at 394; *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). This usually arises with respect to claims challenging police investigative conduct under the Fourth Amendment, as an illegal arrest or use of force can often be divorced from the ultimate conviction. *See Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995). Here, Plaintiff challenges investigative conduct under the Fourth Amendment. This conduct likely can be successfully challenged without undermining Plaintiff's conviction. Thus, it is not necessary for the conviction to be invalidated before the claims accrue. *See Hoeft v. Joanis*, 727 F. App'x 881, 883 (7th Cir. 2018).

injured and the likely cause of the injury. *See United States v. Kubrick*, 444 U.S. 111, 121–22 (1979); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002).

Yet for Fourth Amendment claims, the Supreme Court and Seventh Circuit seem to have laid down a bright-line rule that such claims accrue on the date of the allegedly wrongful search or seizure, regardless of the plaintiff's knowledge of the illegality thereof. *Neita v. City of Chi.*, 830 F.3d 494, 498 (7th Cir. 2016) (citing *Wallace*, 549 U.S. at 396); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). District courts in this Circuit have noticed the tension between the clarity of the *Wallace* rule and the discovery rule applicable to other Section 1983 actions. *See Mihelic v. Will Cnty., Ill.*, 826 F. Supp. 2d 1104, 1111 (N.D. Ill. 2011); *Bennett v. Vahl*, No. 09 C 6639, 2011 WL 2415017, at *4–5 (N.D. Ill. June 10, 2011).

In this case, the challenged search occurred on April 5, 2011. If that is the accrual date, Plaintiff's action is more than a year late. But if accrual turns on whether Plaintiff knew of the invalidity of the warrant and underlying application, the date might be pushed back significantly. Yet, even if the discovery rule applies here, the Court harbors significant concern about Plaintiff's efforts to investigate his alleged constitutional injury. *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (federal discovery rule includes requirement that the plaintiff conduct a reasonably inquiry to discover the nature and cause of his injury).

Plaintiff's allegations suggest an argument that he was wrongfully deprived of information he needed to understand the unlawfulness of the search and seizure, both by his lawyer and the State. Plaintiff would probably contend that he did not know about the Fourth Amendment violations until he filed his motion to withdraw his plea in August 2012. But

there appears to be no reason why Plaintiff could not have sought records relating to the search himself, even assuming that the prosecutor did not disclose the records and his lawyer did not review them.³

The operative question for the statute of limitations is whether Plaintiff "knew or *should have known* that his constitutional rights had been violated," not whether his lawyer knew. *Haywood v. Champaign County, Ill.*, 596 F. App'x 512, 513 (7th Cir. 2015) (emphasis in original). In criminal or habeas proceedings, Plaintiff can blame missteps in discovering his claims on his counsel, under the rubric of ineffective assistance of counsel. No such protections exist for damages claims under Section 1983. The responsibility to diligently investigate and pursue such a claim rests with Plaintiff alone.

The Court need not resolve the limitations question at this juncture, given the lenient review applied at screening and the need for further explication of the underlying facts. A district court can dismiss a complaint as untimely on screening only when the allegations conclusively establish it. *See Cannon v. Newport*, 850 F.3d 303, 306 (7th Cir. 2017). Untimeliness is

---

³The bright-line rule in *Wallace* makes the most sense when applied to a straightforward claim of false arrest under the Fourth Amendment. If Plaintiff had been arrested on the street without doing anything wrong, he would have good reason to immediately suspect a violation of his rights. *See Thomas v. City of Chi.*, No. 07–cv–4969, 2009 WL 1444439, at *3 (N.D. Ill. May 21, 2009) (*Wallace*'s accrual rule makes sense for false arrest claims because "a person who gets arrested has 'knowledge which would lead a reasonable person to investigate the possibility that [his] legal rights had been infringed.'") (quoting *CSC Holdings*, 309 F.3d at 992–93). But here, the alleged violation relates to the legal sufficiency of the warrant and the search premised thereon. For that reason, it is harder, though not impossible, to say that Plaintiff should have suspected a violation of his rights immediately upon the execution of the April 5, 2011 search. Perhaps everyone whose home is searched, like everyone who is arrested, should be said to be on notice of a potential constitutional violation and therefore be required to diligently investigate the matter.

strongly inferred by the complaint, but not conclusively established. Thus, the Court leaves it to Defendants to assert a limitations defense if appropriate.

### 3.4 Available Forms of Relief

Based on the foregoing analysis, the Court concludes that Plaintiff may only proceed on claims under the Fourth Amendment against Petropoulos, Thompson, and Huebner. The final matter for consideration as to these remaining claims is whether Plaintiff may recover the relief he seeks. The allegations in this case mirror those Plaintiff made in his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed contemporaneously with this complaint. *See Clincy v. Pollard*, 18-CV-1092-JPS (E.D. Wis.). Plaintiff has asked for essentially identical relief in both cases without an appreciation for the different forms of relief available in each type of action. Specifically, Plaintiff requests: (1) that this Court review his criminal case and related matters, including his grievances against several of the defendants under Wisconsin's Office of Lawyer Regulation; (2) that he be awarded damages; and (3) that he be awarded "time served/arbitration." (Docket #1 at 8).

The Court cannot grant the first request. Review of state attorney disciplinary proceedings would force this federal district court to sit in appellate review of the decisions of state courts, which is prohibited by the *Rooker–Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983). To the extent this Court can review Plaintiff's state criminal proceedings, that must be done only within his Section 2254 action. Similarly, the Court must dismiss Plaintiff's requests related to release from imprisonment. Plaintiff cannot be granted immediate or speedier release in

strongly inferred by the complaint, but not conclusively established. Thus, the Court leaves it to Defendants to assert a limitations defense if appropriate.

### 3.4 Available Forms of Relief

Based on the foregoing analysis, the Court concludes that Plaintiff may only proceed on claims under the Fourth Amendment against Petropoulos, Thompson, and Huebner. The final matter for consideration as to these remaining claims is whether Plaintiff may recover the relief he seeks. The allegations in this case mirror those Plaintiff made in his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed contemporaneously with this complaint. *See Clincy v. Pollard*, 18-CV-1092-JPS (E.D. Wis.). Plaintiff has asked for essentially identical relief in both cases without an appreciation for the different forms of relief available in each type of action. Specifically, Plaintiff requests: (1) that this Court review his criminal case and related matters, including his grievances against several of the defendants under Wisconsin's Office of Lawyer Regulation; (2) that he be awarded damages; and (3) that he be awarded "time served/arbitration." (Docket #1 at 8).

The Court cannot grant the first request. Review of state attorney disciplinary proceedings would force this federal district court to sit in appellate review of the decisions of state courts, which is prohibited by the *Rooker–Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983). To the extent this Court can review Plaintiff's state criminal proceedings, that must be done only within his Section 2254 action. Similarly, the Court must dismiss Plaintiff's requests related to release from imprisonment. Plaintiff cannot be granted immediate or speedier release in

the context of a Section 1983 case. That is only available if he succeeds in his Section 2254 action. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). He can, however, seek damages, so the Court will permit that request for relief to proceed.

4. **CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff may proceed on the above-identified claims arising under the Fourth Amendment against Petropoulos, Thompson, and Huebner, but only insofar as he seeks money damages. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Laura Gramling-Perez, Ann Bowe, Lori Kuehn, Judge Ellen Brostrom, and Pamela Moorshead be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this Order are being electronically sent today to the Wisconsin Department of Justice for service on Defendant Huebner;

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendant Huebner shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this Order upon Defendants Petropoulos and Thompson pursuant to Federal Rule of Civil Procedure 4. Plaintiff is

advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshal will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Defendants Petropoulos and Thompson shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, Plaintiff need not mail copies to the defendants. All Defendants will be served electronically through the Court's electronic case filing system. Plaintiff should also retain a personal copy of each document filed with the Court.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of the Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge